IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID MUTNICK, for himself and others similarly situated, | ) ) ) | Case No. 20 C 512 |
| Plaintiff, | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) | Magistrate Judge Maria Valdez |
| CLEARVIEW AI, INC.; HOAN TON-THAT; RICHARD SCHWARTZ; and CDW GOVERNMENT LLC | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S RESPONSE TO CLEARVIEW DEFENDANTS' MOTION TO STAY**

On May 4, 2020, during a conference call between Plaintiff's counsel and counsel for Defendants Clearview AI, Inc.; Hoan Ton-That; and Richard Schwartz (collectively, the "Clearview Defendants"), defense counsel revealed that the Clearview Defendants had taken/intend to take numerous actions that they believed addressed the concerns raised in Plaintiff's preliminary injunction motion. However, they refused to enter into a stipulated injunction or any other agreement that would compel their modified conduct or allow of oversight thereof. Defense counsel's disclosure was telling – the Clearview Defendants cannot defend their unlawful conduct but want to avoid this Court's oversight.

While the Clearview Defendants contend they would have made these changes absent Plaintiff's motion, the contention lacks credibility. Plaintiff's motion and the Court's briefing schedule drove the changes. The Clearview Defendants now seek a stay of this litigation to lift the lid off the pressure-cooker in which they find themselves. This Court should not provide that relief. Indeed, the requested relief would severely prejudice Plaintiff and putative class members (the "Class Members") by allowing the Clearview Defendants to continue to: (a) egregiously invade

1

their privacy rights; and (b) subject Plaintiff's and Class Members' private biometric identifiers and information to defendants' lax security practices and the unacceptable risks they pose.

On the other hand, the Clearview Defendants would experience no prejudice. Their response to the preliminary injunction motion is due today (May 6, 2020), so they already have responded to the motion. While the Clearview Defendants contend this Court does not have personal jurisdiction over them, they make no serious argument as to Defendant Clearview itself. Thus, while the facts will show that the Court has jurisdiction over all of the Clearview Defendants, its clear jurisdiction over Clearview allows for the entry of the requested injunctive relief.

## FACTUAL BACKGROUND

### *The Clearview Defendants*

Defendant Clearview is a Delaware corporation and claims to be headquartered in New York. However, according to public records, Clearview is not registered to do business in that state. Ex. 1 (New York State Department of State record). Defendants Ton-That and Schwartz are principals of Defendant Clearview. Dkt. 6 ¶¶ 14, 18. As discussed in more detail below, Clearview directed customers to make payments to Defendant Schwartz's home address and listed Schwartz's home address in its letterhead.

### *Plaintiff's Allegations*

Plaintiff David Mutnick filed a class action complaint on January 22, 2020, and subsequently amended the complaint on January 29, 2020. Dkts. 1, 6. As alleged in the amended complaint (the "Complaint"), the Clearview Defendants scraped over 3 billion facial images from the internet and scanned the facial geometry – *i.e.*, the biometric identifiers and information – of each individual. *Id.* at ¶¶ 2, 36. The Clearview Defendants also built a searchable database of the

scanned images (the "Biometric Database") – thereby enabling database users to instantly identify unknown individuals using nothing more than a photo. *Id.* ¶¶ 2, 36, 38-39, 41.

A person with access to the Biometric Database can upload a face image of an unknown person to the database, and the database will then: (a) match that face with images in the database; and (b) provide the user with information the Clearview Defendants have amassed about the person. *See id.* According to an article published in *Buzzfeed News*, over 500,000 face searches have been performed with the Biometric Database, including 9,000 by the Illinois Secretary of State's Office.[1] *See* Ex. 2 (Illinois Secretary of State Documents). The Chicago Police Department also purchased access to the Biometric Database. Ex. 3 (Clearview Quote and Invoice to Chicago Police Department ("CPD")); Dkt. 32-2 (CPD Purchase Order for Biometric Database). Notably, Clearview directed the CPD to send payments to Defendant Schwartz's home address. *See* Ex. 3; Dkt. 9 (Schwartz Summons).

Plaintiff alleges that the Clearview Defendants' conduct violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), as well as constitutional and common-law claims. *Id.* Plaintiff seeks certification of nationwide and Illinois classes. Dkt. 6 ¶ 58.

***The Other Cases***

After Plaintiff filed his complaint, additional complaints were filed against the Clearview Defendants (in whole or in part) in the: (a) Eastern District of Virginia – *Roberson v. Clearview AI, Inc.*, No. 1-20-cv-111 (E.D. Va. Feb. 2, 2020) ("*Roberson*"); and (b) this District – *Hall v. Clearview AI, Inc.*, No. 1:20-cv-846 (N.D. Ill. Feb. 5, 2020) ("*Hall*"). After those complaints were filed, litigation was commenced against the Clearview Defendants (in whole or in part) in the

---

[1] Ryan Mac, *et al.*, *Clearview's Facial Recognition App Has Been Used by the Justice Department, ICE, Macy's Walmart, and the NBA*, <u>Buzzfeed News</u> (Feb. 27, 2020) ("*Clearview's Facial Recognition App Use*"), https://www.buzzfeednews.com/article/ryanmac/clearview-ai-fbi-ice-global-law-enforcement (last accessed on Apr. 21, 2020).

Southern District of New York and the Southern District of California: *Calderon v. Clearview AI, Inc.*, 1:20-cv-1296-CM (S.D.N.Y. Feb. 13, 2020) ("*Calderon*") (Dkt. 46-3); (b) *Burke v. Clearview AI, Inc.*, 1:20-cv-3104-CM (S.D. Cal. Feb. 27, 2020) ("*Burke*") (Dkt. 46-4) (c) *Broccolino v. Clearview AI, Inc.*, 1:20-cv-2222-CM (S.D.N.Y. Mar. 12, 2020) ("*Broccolino*") (Dkt. 46-5); (d) *McPherson v. Clearview AI, Inc.*, 1:20-cv-3053-CM (S.D.N.Y. Apr. 15, 2020) ("*McPherson*") (Dkt. 46-6); and (e) *John v. Clearview AI, Inc.*, 1:20-cv-3481-UA (S.D.N.Y. May 4, 2020) (Ex. 4 attached hereto). The *Burke* case was later transferred to the Southern District of New York (the "Southern District") by agreement.

Save *Roberson*, at least one plaintiff in each of the above-listed cases is an Illinois resident seeking enforce his or her rights under Illinois' BIPA.

### The Preliminary Injunction

On April 8, 2020, Plaintiff filed a motion for preliminary injunction seeking to enjoin the Clearview Defendants from: (a) further BIPA violations; and (b) continuing to collect Illinois residents' biometric identifiers and information without implementing requisite security measures. Dkt. 32. On April 17, 2020, in the wake of news of a massive Clearview security breach, Mutnick filed a Notice of Supplemental Factual Information in Support of Motion for Preliminary Injunction. Dkt. 39. This Court has ordered the Clearview Defendants to respond to Plaintiff's motion today – May 6, 2020 – and Plaintiff to file any reply on or before May 20, 2020.[2] Dkt. 33.

### The Southern District Shenanigans

On April 9, 2020 – one day after Plaintiff filed his injunction motion – lawyers in *Calderon* moved to be appointed interim class counsel in New York, making no mention of the injunction

---

[2] Defendants confirmed with the Court's deputy that the briefing schedule was not impacted by the Third Amended General Order 20-0012, dated April 24, 2020. *See* Ex. 5 (5/4/20 Drury Email); Ex. 6 (5/4/2020 Wolosky Email).

pending before this Court. *Calderon* Dkt. 17-18. Notably, the *Calderon* lawyers did not assist with the Plaintiff's injunction motion and had not done any substantive work in their own case.

Chief Judge McMahon declined to take any action on the *Calderon* lawyers' motion. Dkt. 52-1. Indeed, in a written order, Judge McMahon expressed doubt as to whether any of the Clearview cases pending in the Southern District belonged there and indicated that she would "certainly have to consider seriously any motion that might be made to transfer the case . . . to either the Northern or Southern District of Illinois":

> It is not at all clear to me that these cases belong in this court. They arise under an Illinois statute, the Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. They are brought on behalf of a class of persons who, while residing in the State of Illinois, had certain "biometrics" . . . "scraped" by Defendants and used without their consent in violation of the Illinois statute. While it is possible that some members of the putative class no longer reside in Illinois, it is beyond cavil that the Illinois statute applies only to Illinois residents and that the vast majority of class members presently reside in that state. Moreover, one of the defendants in the Calderon case is an Illinois citizen.

> Defendants have made no motions as yet, but this court would certainly have to consider seriously any motion that might be made to transfer the case . . . to either the Northern or Southern District of Illinois.

Dkt. 52-1.

### *The Motion to Intervene*

After Judge McMahon entered the above-described order, Plaintiff moved to intervene in the various Southern District cases in order to have those cases dismissed, stayed or transferred to the Northern District of Illinois. Dkt. 52-2. Judge McMahon entered an expedited briefing schedule, and that motion has been fully briefed. Dkt. 52-3.

### *The Clearview Defendants' Motions*

Months after Plaintiff filed his initial complaint and with their responses to Plaintiff's injunction and intervention motions coming due, the Clearview Defendants suddenly decided that

this Court did not have personal jurisdiction and that they would incur prejudice without a stay of this litigation. *See* Dkt. 45-48. In their motion, the Clearview Defendants ignore Clearview's substantial contacts with, and targeting of, Illinois that are directly related to this case. The contacts include agreements with CPD and the Illinois Secretary of State Police to allow those entities to use the Biometric Database. *See* Ex. 3; Dkt. 32-2; Ex. 2. As such, the contacts relate directly to each of Plaintiff's constitutional and BIPA claims. Moreover, the Clearview Defendants ignored the evidence of Clearview's failure to observe corporate formalities and to distinguish between itself and its principals. For instance, Clearview had customer payments sent to Schwartz's home, and Clearview failed to register to do business in New York, presumably to conceal its loose business operations. *See* Exs. 1, 3, 7.

***Clearview Concedes the Validity of the Injunction Motion***

On May 4, 2020, almost one month after Plaintiff filed his preliminary injunction motion, counsel for the Clearview Defendants tacitly conceded that they violated the BIPA and recognized that the injunctive relief Plaintiff seeks is proper. Specifically, defense counsel stated that Defendant Clearview had taken/intends to take various actions that they believed addressed the conduct Plaintiff seeks to enjoin. According to Defendants:

1.  Clearview is cancelling all accounts with non-law enforcement agencies and non-governmental entities, officers or department;

2.  Clearview is cancelling all accounts with Illinois customers;

3.  Clearview is implementing technical fixes so that no one can log into Clearview's Biometric Database from an IP address originating in Illinois;

4.  Clearview is blocking all "Illinois" photographs and biometric identifiers and information/facial vectors within the Clearview biometric database to a limited number of staff who will only be able to access the photos and information in connection with this litigation;

6

5. Clearview is limiting access to the "Illinois" photographs and biometric identifiers and information/facial vectors within the Clearview biometric database to a limited number of staff who will only be able to access the photos and information in connection with this litigation;

6. Clearview is amending its User Agreement to prohibit any entity from uploading photographs of persons known to be from Illinois or where there is reason to believe the persons are from Illinois;

7. Clearview is blocking the uploading of photographs from servers that are associated with Illinois;

8. Clearview is implementing a "geo-fence" that will prohibit the upload of any photographs containing information that connects the photograph to Illinois (this can include geo-location information and other metadata); and

9. Clearview is going to publish a statement regarding its biometric data retention obligations.

Ex. 5 at 1.

The Clearview Defendants further contended that the above-described actions mooted Plaintiff's preliminary injunction motion. Plaintiff disagreed, as it is well-settled that a defendant's mere cessation of conduct sought to be enjoined does not moot an injunction motion. *Id.* at 2; *see also* Ex. 7 (5/5/20 Drury Email) at 1; *Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). Absent a court order, the Clearview Defendants are free to resume their conduct at any time or claim that their conduct does not violate their self-imposed rules. This concern is especially acute here, where Defendants deny being bound by the BIPA, and there are infirmities with Defendants' proposal. *See* Ex. 7 at 1. Only this Court can implement and enforce the injunctive relief Plaintiff seeks. Thus, in light of Defendants' willingness to cease some of their unlawful conduct, Plaintiff has proposed that the parties work together to craft a stipulated injunction for entry by the Court. *Id.* The Clearview Defendants have refused the proposal.

## ARGUMENT

### Legal Standard

In deciding whether to grant a motion to stay proceedings, courts consider "whether judicial economy favors a stay; the potential prejudice to the non-moving party if the case is stayed; and any hardship or inequity to the moving party if the case is not stayed." *Terkel v. AT&T Inc.*, 2006 WL 1663456, at *1 (N.D. Ill. June 9, 2006). These factors weigh against staying these proceedings, for the reasons discussed below.

## I.      Judicial Economy Does Not Favor a Stay.

### A.  The Court Has Jurisdiction Over the Clearview Defendants.

The Clearview Defendants' primary basis for contending a stay is proper is their self-serving contention that this Court does not have jurisdiction. Dkt. 48 at 5. While Plaintiff will fully address this issue in his response to the Clearview Defendants' motion to dismiss/transfer, even a cursory view of the facts demonstrates that this Court has jurisdiction.

The Clearview Defendants had sufficient minimum contacts with Illinois—including agreements with not only the Chicago Police Department but other Illinois entities as well, such as the Illinois Secretary of State Police. The Clearview Defendants specifically targeted Illinois entities, *see* Exs. 2, 3; Dkt. 32-2; their contacts with Illinois were related to their claims; and the exercise of specific personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

The Seventh Circuit's recent decision in *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020), is directly on point. There, a plaintiff alleged that a corporation and its executives had infringed and diluted his trademark, violated Illinois statutes on consumer fraud and deceptive trade practices, engaged in false advertising and cybersquatting, and filed a

fraudulent trademark application. *Id.* at 389. The defendants moved to dismiss for lack of personal jurisdiction, claiming they sold their product exclusively online and conducted all of their marketing and advertising for their product through the Internet. *Id.* at 390. The defendants submitted affidavits very similar to the ones submitted by Defendants Schwartz and Ton-That in this case, averring that: (a) the corporation had no physical presence or employees in Illinois; (b) the corporation was not registered in Illinois; and (c) the individuals had no property in Illinois and was not located in Illinois. *Id.* at 391. Similar to the Clearview Defendants' "nationwide marketing" argument (*see* Dkt. 46-2, ¶11), the defendants in *Curry* also argued that although they had sales in Illinois, those sales were "only 1.8% of Revolution's total gross sales nationwide." *Id.* at 392.

The Seventh Circuit rejected the defendants' argument that an Illinois district court did not have personal jurisdiction over the defendant corporation. It specifically rejected the physical presence argument and reaffirmed that "'purposeful direction' may be shown by evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state. For example, a defendant may cause its product to be distributed in the forum state," as the Clearview Defendants did here. *Id.* at 398.

The court held that the defendant corporation had formed sufficient minimum contacts even though it sold its products only online through its website and third-party websites because it arranged for sales to Illinois residents through its website and shipped its product to Illinois customers. *Id*. The court expressly held that "[i]n the face of this sales arrangement, it is not persuasive to say that [the corporation] did not exploit the Illinois market simply because its advertising was not especially aimed at that state." *Id.* (citing *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428-29 (7th Cir. 2010)). Instead, "[t]here is no per se requirement that the defendant

especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum." *Id.* The court further held that the defendant's minimum contacts with the forum were "suit-related" because "the direct sales that [the corporation] made in Illinois involved Diesel Test, a product that bears the allegedly infringing trademark that forms the very basis of this action." *Id.* at 401.

Here, Plaintiff will have little difficulty showing that the Clearview Defendants' contacts with the forum were "suit-related," because its contacts with Illinois—such as with the CPD and Illinois Secretary of State—were sales of the very Biometric Database at issue in Plaintiff's claims. *See* Exs. 3, 7; Dkt. 32-2. Moreover, the sales were to law enforcement entities for the purpose of allowing them to use the Biometric Database for law enforcement purposes. This conduct is at the heart of Plaintiff's constitutional claims.

Further, Plaintiff will also have no difficulty showing that the exercise of jurisdiction over the Clearview Defendants in this case do not offend traditional notions of fair play and substantial justice. Where "a plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Curry*, 949 F.3d at 402 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In *Curry*, the Seventh Circuit concluded that where Revolution "has held itself as conducting business nationwide … the burden of requiring Revolution to defend a lawsuit in Illinois is minimal. Revolution 'wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure.'" *Id.* (quoting *Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010)).

10

Thus, in *Curry* and other cases, the Seventh Circuit has rejected the very same argument that the Clearview Defendants make. *See, e.g.*, *Hemi Group*, 622 F.3d at 760; *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010).

This Court has jurisdiction over Defendants Ton-That and Schwartz, as well – as Plaintiffs will explain in full in their forthcoming response to the motion to dismiss/transfer. On remand in *Curry*, the district court considered whether there was personal jurisdiction over the defendant corporation's CEO and president, Joshua and Barry Nussbaum. *Curry v. Revolution Laboratories, LLC*, 2020 WL 1330363, at *1 (N.D. Ill. Mar. 23, 2020). The district court held that "Given the defendants' high-ranking roles in the management and operation of [the corporation] … there is a sufficient basis to draw a reasonable inference of their involvement in the activities cited by the Seventh Circuit as supporting personal jurisdiction." *Id.* The same applies here. Ton-That and Schwartz are the founders of Clearview and the CEO and President of that company, respectively. *See* Dkt. 46-2, 46-7. Moreover, both Ton-That and Schwartz have management responsibilities within Clearview.[3] *Id.*

In addition to their high-ranking roles in Clearview's management and operations, the evidence demonstrates that there was a lack of corporate formality at Clearview, as well as a unity of interest between Clearview and its high-ranking officials, justifying the piercing of the corporate veil. Clearview was not registered to do business in the State of New York. Moreover, the business Clearview did was run out of Schwartz's home, and customers were directed to make payments to

---

[3] The fiduciary shield defense will not be available to Schwartz or Ton-That because it "is unavailable to high-ranking company officers and shareholders. Individuals in these positions have a direct financial stake in the company's health and therefore can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit." *Margulis v. Med. Parts Int'l, Inc.*, 1999 WL 183648, at *5 (N.D. Ill. Mar. 25, 1999).

11

that address. Exs. 1, 3; Ex. 2 at 7. Moreover, Clearview used Schwartz's home address on its corporate letterhead.

### B. Several Other Reasons Show that Judicial Economy Does Not Favor a Stay.

Several other reasons show that judicial economy does not favor a stay. First, contrary to the Clearview Defendants' contention (*see* Dkt. 48 at 4), the preliminary injunction does not raise "complicated substantive issues" or "require the Court to address the merits of Mutnick's eleven causes of action …." The issues raised in Plaintiff's motion for preliminary injunction are straightforward and concern only the Clearview Defendants' violations of the BIPA. *See* Dkt. 32. As explained in Plaintiff's motion and as tacitly conceded by the Clearview Defendants, they have no substantive defense to the BIPA claims alleged by Plaintiff, and there can be no serious dispute that Plaintiff and Class Members have no adequate remedy at law. Plaintiff and Class Members will also suffer irreparable harm during the pendency of this litigation. Dkt. 32 at 13-14. The analysis that the Court would need to conduct in order to decide the preliminary injunction motion is based on well-established law and does not require discussion of complex issues.

Second, the fact that the Clearview Defendants have sought to stop their unlawful conduct in response to the injunction motion demonstrates that they do not have much of a defense and that Plaintiffs' motion is meritorious. Because the Clearview Defendants have already made this stunning concession, they have no basis not to memorialize that concession via a stipulated injunction, as Plaintiff has suggested. That would further narrow the issues that the Court would need to address in Plaintiff's motion for preliminary injunction and further judicial economy.

Finally, even if this case somehow were to be transferred to the Southern District, the preliminary injunction motion would transfer with it. There would be no waste of judicial resources

spent in this Court's evaluation of whether a preliminary injunction should issue because of Plaintiff's likelihood of success on an Illinois law (BIPA) affecting Illinois citizens.

## II.     Plaintiff Will Be Prejudiced If the Case Is Stayed.

Plaintiff will be prejudiced if the briefing on the motion for preliminary injunction or the case is stayed. Absent preliminary injunctive relief, Plaintiff and class members will suffer irreparable harm during the pendency of this litigation. Despite the fact that the Biometric Database poses chilling privacy risks, the Clearview Defendants continue to collect, distribute, sell and profit from Plaintiff's and Class Members' Biometric Identifiers, thereby exposing that sensitive information to countless others and inhibiting Plaintiff's and class members' ability to freely participate in society. Defendants have also taken steps to expand the ways in which they disseminate and distribute the Biometric Identifiers. Furthermore, Defendants' lax security practices—which they have not offered to address in their discussions with Plaintiff—further expose Plaintiff and Class Members to the irreparable and everlasting harm of hackers obtaining their Biometric Identifiers and using those identifiers for nefarious purposes. Indeed, the Clearview Defendants suffered a massive data breach after Plaintiff filed his motion. *See* Dkt. 39.

The Clearview Defendants' claim of no prejudice lacks merit. Ignoring that the injunction motion has already changed their conduct, the Clearview Defendants disingenuously contend Plaintiff filed the motion to position Plaintiff's counsel for appointment as lead counsel. Dkt. 48 at 5. Further, while the Clearview Defendants argue that Plaintiff filed his motion for preliminary injunction two months after he filed suit, that is much ado about nothing. A delay of two months is not a lengthy period of time, especially considering that a final resolution of this case on the merits could take years. *See, e.g.*, *Vaughan Mfg. Co. v. Brikam Intern., Inc.*, 814 F.2d 346, 351 (7th Cir. 1987) (affirming grant of preliminary injunction where there was a delay of nine months).

Moreover, as set forth in the injunction motion, during those two months, Plaintiff learned additional information about the egregious nature of the conduct at issue and the operations of this highly secretive company. Moreover, the Clearview Defendants continue to experience major data security issues.

### III. There Will Be No Hardship or Inequity to the Clearview Defendants if the Case Is Not Stayed.

The Clearview Defendants will not be prejudiced by denial of a stay. First, their response to the motion for preliminary injunction is due today, so they have already expended the resources on it.

Second, they raise the prospect of a merits hearing on the preliminary injunction motion, but there is no reason why the motion could not be decided on the briefs, and the Clearview Defendants offer none. Even if there was a hearing, that is part of being a litigant in any case.

Third, there is little risk of duplicative proceedings or inconsistent rulings. While it is true that the Southern District cases against Clearview are pending, no party has taken any substantive action in those cases. *See* Dkt. 52-3 at 3.[4] None of the plaintiffs in those cases have filed preliminary injunction motions, and the Clearview Defendants just sought an extension to file their responsive pleadings. Thus, there could be no risk of inconsistent rulings on the preliminary injunction motion. Moreover, Plaintiff's motion to intervene in the Southern District Cases, there is a likelihood that those cases will be transferred here. Thus, there is no reason for this Court to stay briefing and decision on the preliminary injunction motion because there is no risk of inconsistent rulings.

---

[4] Page numbers refer to the page of the docket entry.

Fourth, the Clearview Defendants have already indicated a willingness to provide discovery relating to the jurisdictional issues. Ex. 6. At the very least, discovery on the jurisdictional issues should proceed.

## CONCLUSION

For the foregoing reasons, the Court should deny the Clearview Defendants' motion to stay.


Dated: May 6, 2020

Respectfully submitted,

/s/ Elizabeth Wang
One of Plaintiff's Counsel

| | |
|---|---|
| Arthur Loevy | Elizabeth Wang |
| Michael Kanovitz | LOEVY & LOEVY |
| Jon Loevy | 2060 Broadway, Suite 460 |
| Scott R. Drury | Boulder, CO 80302 |
| LOEVY & LOEVY | 720.328.5642 |
| 311 N. Aberdeen, 3rd Floor | elizabethw@loevy.com |
| Chicago, Illinois 60607 | |
| 312.243.5900 | |
| arthur@loevy.com | |
| mike@loevy.com | |
| jon@loevy.com | |
| drury@loevy.com | |

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, hereby certify that, on May 6, 2020, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Elizabeth Wang
*One of David Mutnick's Attorneys*
