IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID MUTNICK, for himself and others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 20 CV 512 ) ) Judge Sharon Johnson Coleman ) |
| v. | ) ) Magistrate Judge Maria Valdez ) |
| CLEARVIEW AI, INC.; HOAN TON-THAT; RICHARD SCHWARTZ; and CDW GOVERNMENT LLC | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CLEARVIEW DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

Michael Kanovitz
Jon Loevy
Scott R. Drury
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
O: 312.243.5900
mike@loevy.com
jon@loevy.com
drury@loevy.com

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

## INTRODUCTION

This Court has specific personal jurisdiction over the Defendants. The Clearview Defendants specifically targeted Illinois entities for business, knowing that its actions would cause injury to Illinois residents. Clearview sold access to its Biometric Database to more than 105 Illinois entities, who used it on Illinois citizens, and Clearview eagerly courted more Illinois entities. This Court has jurisdiction not only over Clearview but also over Hoan Ton-That and Richard Schwartz, high-ranking officers (CEO and President) who manage Clearview's technology and sales, which were purposefully and directly aimed at Illinois and its citizens. Furthermore, the motion to transfer venue should be denied as well because the convenience of the parties and witnesses favors Illinois and the center of gravity of the case is in Illinois.

## FACTUAL BACKGROUND

Plaintiff David Mutnick, an Illinois resident, filed this class action complaint against Defendants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, and Richard Schwartz (collectively, "Defendants") for: (a) scraping photographs with the faces of Plaintiff and Class Members from the internet; (b) performing geometric scans of their face geometries; and (c) unlawfully collecting, disseminating and profiting from their biometric identifiers and information (the "Biometric Data"). Dkt. 6 ¶¶ 2, 7-12, 27-49, 93-120. Defendants had scraped over 3 billion facial images from the internet, harvested the Biometric Data from each image and created a searchable biometric database (the "Biometric Database") which enabled database users to instantly identify unknown individuals using only a photograph. *Id.* ¶¶ 2, 36, 38-39, 41. Clearview subsequently sold, traded, leased, and otherwise profited from the Biometric Data. *Id.* ¶¶ 36, 93-99. Defendants did not notify Plaintiff or Class Members of their conduct or obtain their written consent to harvest their Biometric Data. *Id.* ¶¶ 31-34, 100-06, 114-20.

1

On behalf of a putative nationwide class, Plaintiff has alleged multiple constitutional claims against Defendants and an unjust enrichment claim. *Id.* ¶¶ 68-87, 121-30. On behalf of a putative class of Illinois residents, Plaintiff has alleged the claims as well as violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq. Id.* ¶¶ 93-120.

Clearview is a Delaware corporation, nominally based in New York. *Id.* ¶ 13. However, Clearview is not registered to do business in New York. Dkt. 57-1. Ton-That and Schwartz co-founded Clearview. Dkt. 6 ¶¶ 14, 18; *see* https://richardschwartz.net/ (last accessed May 19, 2020). Ton-That is Clearview's CEO responsible for managing Clearview's technology matters, among other things. Dkt. 46-7 ¶ 1. Schwartz is Clearview's President, responsible for managing Clearview's sales, among other things. Dkt. 46-2 ¶ 1.

Clearview, by and through its high-ranking officers, Ton-That and Schwartz, has executed agreements with hundreds of law enforcement and government agencies to provide them access to the Biometric Database and Biometric Data. Dkt. 6 ¶¶ 7, 17, 38, 39**.** Pursuant to each agreement, Defendants disseminated the Biometric Data in return for payment. *Id.* ¶ 38. As described below, Clearview targeted Illinois citizens' rights and knew its actions would cause injury in Illinois. *Id.* ¶ 7. Generally, Clearview marketed its technology throughout the United States, including in Illinois. *Id.* ¶ 13; *see also* Dkt. 32-1; *see also* Dkt. 46-2 ¶ 11 (noting nationwide marketing, which includes Illinois). Specifically, Clearview marketed and contracted to provide its database in Illinois and collected and sold Illinois citizens' Biometric Data in violation of BIPA. Dkt. 6 ¶¶ 13, 38-39; Dkt. 57-2; Dkt. 57-3, 57-4; Dkt. 32-2.

Defendant Clearview provided the Biometric Database to more than 105 Illinois entities, including Illinois law enforcement agencies such as the Chicago Police Department ("CPD"), Rockford and Naperville Police Departments, and the Illinois Secretary of State Police (as

discussed below)—and in so doing, it sold, disclosed, obtained, and profited from the Biometric Identifiers of Illinois citizens. *Id.*; Dkt. 59-1; Ex. 1. Among the images of Plaintiff and Class Members within the Biometric Database are images created in Illinois, uploaded from Illinois, and managed via Illinois-based computers and mobile devices. Dkt. 6 ¶ 17. Clearview scraped those images from internet-based platforms and websites, including, on information and belief, websites of Illinois companies or companies who operate servers in Illinois.[1] *Id.* ¶¶ 13, 17.

According to a published report, Clearview users have performed over 500,000 face searches with the Biometric Database, including 9,000 by the Illinois Secretary of State's Office ("IL SOS").[2] *See* Dkt. 57-2. CPD also purchased access to the Biometric Database. Dkt. 6 ¶¶ 39-40; Dkt. 57-3; Dkt. 32-2.[3] Clearview directly and purposefully targeted Illinois entities. For instance, through emails and phone calls, Clearview marketed its Biometric Database to the IL SOS, purposefully sought a contract with the IL SOS, and negotiated a price with the IL SOS. *See* Dkt. 57-2. In one of those emails, a Clearview employee expressed enthusiasm at targeting more Illinois police departments as customers. *Id.* at 5-6. As with Clearview's price quote to the CPD, Clearview directed the IL SOS to send payments to "Clearview AI / Attn: Richard Schwartz" at Defendant Schwartz's home address. *Id.* at 7; *see* Dkt. 57-3; Dkt. 9.

According to *Buzzfeed News*, more than 105 Illinois-based entities (including law enforcement) have used the Biometric Database more than 12,500 times. Dkt. 59-1 at 4. This includes the Naperville Police Department. *Id.* It has also been reported that the Rockford Police

---

[1] Defendants make the conclusory assertion that this is a "vague generalization." Dkt. 46 at 9. The allegation contains the necessary pre-discovery specificity to be accepted as true on a Rule 12(b)(2) motion. Indeed, given how secretive Clearview is, Plaintiff cannot be expected to have more detail at this early stage. The allegation is distinguishable from the "vague generalization" at issue in the case cited by Defendants. *Id.*
[2] *See* https://www.buzzfeednews.com/article/ryanmac/clearview-ai-fbi-ice-global-law-enforcement (last accessed May 19, 2020).
[3] *See also* https://chicago.suntimes.com/crime/2020/1/29/21080729/clearview-ai-facial-recognition-chicago-police-cpd (last accessed May 19, 2020).

Department ("RPD") or Rockford officers have used Clearview. Clearview representatives also attended a trade conference, at which they had one-on-one meetings with representatives from many police departments, including CPD and the RPD, to promote Clearview's product.[4]

Defendants Schwartz and Ton-That took actions to further Clearview's alleged illegal scheme, knowing that it would take place, at least in part, in this jurisdiction and that it would injure citizens living here. Dkt. 6 ¶ 18. Schwartz managed sales for Clearview (Dkt. 46-2 ¶1) and, therefore, had discretion to determine when, how, and to what extent Clearview purposefully reached out to Illinois customers to obtain Illinois business that would affect Illinois citizens. Schwartz and Ton-That knew or had reason to know that their scheme would deprive Illinois citizens of their protected privacy rights, neutralize Illinois citizens' ability to control access to their Biometric Identifiers via their Illinois-managed computers and social media accounts, and expose Illinois citizens to ongoing surveillance. Dkt. 6 ¶ 18.

Pursuant to an understanding with law enforcement, Schwartz and Ton-That agreed to direct, directed and continue to direct Clearview employees to undertake the unauthorized scraping of photographic and other information from websites and to unlawfully extract biometric identifiers. *Id.* ¶ 48; *see* Dkt. 46-7 ¶ 1. Schwartz paid for the servers and other costs necessary to carry out these operations and thus has a personal financial stake. Dkt. 6 ¶ 49. Defendants obtained images uploaded from Illinois, violating the user agreements and terms of service of the websites to which they were uploaded. *Id.* ¶¶ 20, 35. Moreover, had Defendants complied with BIPA, Class Members residing in this District and managing their social media accounts primarily from within the District would have been able to decide whether, for what purposes,

---

[4] *See* https://wrex.com/2020/03/11/digging-deeper-law-enforcements-relationship-with-facial-recognition (last accessed May 19, 2020) (attached as Ex. 1); https://www.policemag.com/537108/police-technology-exchange-brings-together-police-buyers-and-technology-supplier (last accessed May 19, 2020) (attached as Ex. 2).

and to whom they wanted to provide access to their biometric data. *Id.* Defendants' failure to comply with BIPA—a principal omission giving rise to liability—is directed at this District. *Id.*

## ARGUMENT

In determining whether this Court has personal jurisdiction over defendants, the court takes "the plaintiff's asserted facts as true and resolve[s] any factual disputes in [his] favor." *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation and internal quotation marks omitted)). Plaintiff need only make a prima facie case of personal jurisdiction. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010). Thus, the Court may only accept as true any facts in the declarations that do not conflict with anything in the record, either by way of Plaintiff's complaint or other submissions. *Curry*, 949 F.3d at 393.

**I.     The Court Has Specific Jurisdiction Over the Clearview Defendants.**

This Court may exercise jurisdiction over the Clearview Defendants as long as they had "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Absence of physical presence in a state does not defeat personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Thus, the averments in Schwartz's and Ton-That's declarations about their lack of physical presence in Illinois (*see* Dkt. 46-2 ¶¶ 2-4, Dkt. 46-7 ¶¶ 2-4) do not establish lack of personal jurisdiction. Furthermore, there is no "special jurisdictional test for Internet-based cases.'" *Id.* at 398 (citation omitted).

**A.     The Court Has Specific Jurisdiction Over Clearview.**

**1.     Clearview Has Minimum Contacts with Illinois.**

Clearview had sufficient minimum contacts with Illinois—including agreements with CPD, IL SOS, Rockford and Naperville Police Departments, and *over 100 other Illinois entities* who

used Clearview's Biometric Database.[5] *See supra*; Dkt. 59-1; Dkt. 57-2; Dkt. 57-3; Dkt. 32-2. These contacts directly relate to Plaintiff's claims, and the exercise of specific jurisdiction over Clearview would not offend traditional notions of fair play and substantial justice.

In *Curry*, the Seventh Circuit held that an Illinois district court had personal jurisdiction over the defendant and reaffirmed that "'purposeful direction' may be shown by evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state. 949 F.3d at 398. According to the Seventh Circuit:

> it is not persuasive to say that Revolution did not exploit the Illinois market simply because its advertising was not especially aimed in that state. There is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum.

*Id.* at 399. The Seventh Circuit further held that "it is not persuasive to say that [the corporation] did not exploit the Illinois market simply because its advertising was not especially aimed at that state." *Id.* (citing *uBID, Inc.*, 623 F.3d at 428-29); *see also Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 755-58 (7th Cir. 2010) (minimum contacts where out-of-state defendant was ready and willing to and, in fact, did do business with, a single Illinois resident).

Clearview's contacts with Illinois go beyond those in *Curry* and *Hemi Group*. Not only could Clearview foresee that its product would be sold in Illinois, it purposefully directed its activities at and solicited business from Illinois entities. *See* Dkt. 57-2 at 5-6; Ex. 2. Moreover, Clearview's "nationwide advertisements were accessible in Illinois." *Curry*, 949 F.3d at 400; *see* Dkt. 32-1. Clearview's sales to 105 Illinois entities "provides solid evidence that [Clearview] has purposely exploited the Illinois market." *Curry*, 949 F.3d at 400 (citation and internal quotation

---

[5] The Clearview Defendants' contacts with Illinois entities are so extensive they have refused Plaintiff's reasonable requests for jurisdictional discovery of Defendants' agreements, communications with, and other documentation of contacts with Illinois entities, saying that this would take "months of document discovery." Ex. 3 (Emails between Wolosky and Drury) at 1.

marks omitted). Even if Clearview's employees were sitting in New York when they were emailing, calling, and otherwise soliciting the business of Illinois entities, this type of activity nevertheless constitutes "purposeful direction." *See Felland v. Clifton*, 682 F.3d 665, 674-76 (7th Cir. 2012); *Whitehall Hotel, LLC v. Houston Hotel Owner, LLC*, 2018 WL 4590418, at *4 (N.D. Ill. Sept. 25, 2018). Moreover, Clearview's conduct was purposefully directed at Illinois because its intentional and allegedly tortious conduct was expressly aimed at Illinois with the knowledge that its effects would be incurred there. *Felland*, 682 F.3d at 674-75. Clearview worked with Illinois agencies to violate Plaintiff's and Class Members' rights as residents of Illinois. *See Bryant v. Compass Group USA, Inc.*, 2020 WL 2121463, at *6 (7th Cir. May 5, 2020).

Clearview's contrary arguments fail. Their contacts with Illinois entities were purposeful, business-generating activities, not "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475. The cases cited by Clearview are distinguishable. For instance, in *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016), the court found that the fact that Facebook's website was accessible in Illinois did not confer specific jurisdiction over Facebook where there was no allegation that Facebook targeted its biometric collection activities at Illinois. But the facts here are very different. Unlike Clearview's service, Facebook's targeting of facial recognition technology to Facebook users was unrelated to its forum-directed activities to get advertisers to do business on its website. There was no connection between violating Illinois citizen's BIPA rights and coaxing Illinois sellers to advertise on Facebook. Here, the very thing that Clearview has to sell to the targeted Illinois customers is the data it took from Illinois citizens in violation of BIPA. Moreover, Clearview knew that the Illinois customers it advertised to would not have been interested in its product if it did not have biometric information of Illinois citizens in it. Illinois customers are primarily interested in identifying people in Illinois,

7

not in far away states. Therefore, Clearview's BIPA violations directed at Illinois citizens are 100% related to its seeking paying customers for its service in Illinois. Facebook's tag suggestions, by contract, was unrelated to the advertising services it sold in Illinois.[6]

Likewise, *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), is distinguishable because it involved passive emails sent to a list of subscribers, not the specific targeting at issue here. *Bray v. Lathem Time Co.*, 2020 WL 1492742, at *3 (C.D. Ill. Mar. 27, 2020), is also unavailing because the defendant in that case—unlike Clearview—did not itself create any contact with Illinois or even sell its product to an Illinois entity. Finally, contrary to Defendants' interpretation of *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002), in that case the court simply held that a court may examine the entire course of dealing between parties in order to determine that purposeful availment makes litigating in the forum state foreseeable to the defendant. *Id.* at 716. Here, examination of the entire course of Clearview's conduct shows that it specifically targeted Illinois entities for the purpose of selling them the biometric information of Illinois citizens. Certainly that is the most reasonable inference, and, at this stage, all reasonable inferences are drawn in favor of jurisdiction.

### 2. Clearview's Contacts Are Suit-Related.

Clearview's contacts with Illinois were "suit-related." Clearview contracted to provide its Biometric Database and the Biometric Identifiers to CPD, IL SOS, and other Illinois entities which allowed Clearview and the Illinois entities to violate Plaintiff's and Class Members' civil rights. *See* Dkt. 32-2; Dkt. 57-2; Dkt. 57-3; Dkt. 59-1; Ex. 1; Ex. 2. Moreover, Clearview invaded the privacy rights of Illinois residents in Illinois by collecting their Biometric Identifiers without consent. The Seventh Circuit's recent decision in *Bryant v. Compass Group USA*, is

---

[6] Other cases cited by Defendants, *be2LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2014), and *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019), are similarly distinguishable.

instructive. There, the court likened a BIPA violation to a trespass and held that a defendant's denial of the ability for an Illinois resident to provide informed consent regarding the use of his biometric data constitutes an injury-in-fact. 2020 WL 2121463 at *7. Defendants cannot argue that their Illinois "trespass" and subsequent profiteering and dissemination of the fruits of that trespass are not suit-related. *See Felland*, 682 F.3d at 676. Finally, Clearview's alleged unjust enrichment directly relates to the above-described unlawful conduct that occurred in Illinois.

### 3. Notions of Fair Play and Substantial Justice Support Jurisdiction.

Where "a plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Curry*, 949 F.3d at 402 (quoting *Burger King*, 471 U.S. at 477). Where a defendant corporation "has held itself as conducting business nationwide … the burden of requiring [the corporation] to defend a lawsuit in Illinois is minimal. [The corporation] 'wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure.'" *Id.* (citation omitted).[7] There is no unfairness in subjecting Clearview to jurisdiction in Illinois.

Moreover, here, as in *Curry*, "Illinois has a strong interest in providing a forum for its residents, including [Plaintiff and Illinois Class Members], to seek redress for harms suffered within the state by an out-of-state-actor." *Id.* at 402. And, litigating in Illinois would not be overly burdensome for Clearview, which has significant resources, as evidenced by its investors and the fact that it is being represented by one of the premiere law firms in the world. *See*

---

[7] In light of this binding precedent, Defendants' citation to the nonprecedential, out-of-Circuit case *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002), *see* Dkt. 46 at 9, is unavailing. The case is also distinguishable because it did not involve the purposeful and direct contacts at issue here.

*Whitehall Hotel*, 2018 WL 4590418, at *4 (would not be overly burdensome for wealthy defendant to litigate in Illinois); *uBID*, 623 F.3d at 432-33 (same).

### B. The Court Has Specific Jurisdiction Over Schwartz and Ton-That.

This Court also has jurisdiction over Ton-That and Schwartz. The district court's decision on remand from the Seventh Circuit's opinion in *Curry* is directly on point and persuasive. There, the district court held that it had personal jurisdiction over the defendant corporation's CEO and president: "Given the defendants' high-ranking roles in the management and operation of [the corporation] … there is a sufficient basis to draw a reasonable inference of their involvement in the activities cited by the Seventh Circuit as supporting personal jurisdiction." *Curry v. Revolution Laboratories, LLC*, 2020 WL 1330363, at *1 (N.D. Ill. Mar. 23, 2020).

As in *Curry*, Ton-That and Schwartz: (a) founded Clearview; (b) and are its CEO and President; and (c) have significant management responsibilities, namely managing technology and sales. *See* Dkt. 46-2 ¶ 1; Dkt. 46-7 ¶ 1. Notably, Schwartz's managerial role includes managing sales in Illinois, as evidenced by the fact that customer payments went directly to his home. Dkt. 57-3; Dkt. 57-2 at 7. Given Ton-That's and Schwartz's high-ranking roles at Clearview, the Court may reasonably infer their involvement in the above-described activities concerning Clearview as supporting jurisdiction. *See Curry*, 2020 WL 1330363, at *1.

Defendants' conclusory argument regarding the fiduciary shield doctrine (Dkt. 46 at 9) does not change this conclusion. As a threshold matter, Defendants have forfeited the argument by failing to support or develop it. *Beamon v. Marshall & Illsley Trust Co.*, 411 F.3d 854, 862 (7th Cir. 2005); *Donnelly v. Chicago Park Dist.*, 417 F. Supp. 2d 992, 994 (N.D. Ill. 2006).

Regardless, the fiduciary shield doctrine does not apply. That doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is

10

brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994). When a defendant has (validly) raised this defense, the court must consider "whether, on the basis of defendant's conduct in Illinois or acts affecting Illinois interests, it would be fair to require him to defend an action in Illinois." *Margulis v. Medical Parts Intern., Inc.*, 1999 WL 183684, at *4 (N.D. Ill. Mar. 25, 1999). "[T]he fiduciary shield defense is unavailable to high-ranking company officers and shareholders. Individuals in these positions have a direct financial stake in the company's health and therefore can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit." *Id.* at *5. *See also Hundt v. DirectSat USA, LLC*, 2010 WL 1996590, at *6 (N.D. Ill. May 17, 2010) ("Courts in this district have consistently refused to apply the fiduciary shield doctrine to corporate presidents and CEOs, regardless of whether they are shareholders or not."); *Nat'l Technology, Inc. v. Repcentric Solutions*, 2013 WL 3755052, at *5 (N.D. Ill. July 16, 2013); *Brujis v. Shaw*, 876 F. Supp. 975, 979-80 (N.D. Ill. 1995); *R-Five, Inc. v. Sun Tui, Ltd.*, 1995 WL 548633, at *5 (N.D. Ill. Sept. 12, 1995).

There are two exceptions to the fiduciary shield doctrine: "(1) the shield is removed if the individual's personal interests motivated his actions, and (2) the shield generally does not apply when the individual's actions are discretionary." *Consumer Benefit Servs., Inc.*, 2002 WL 31427021, at *3 (internal quotation marks and citation omitted). Personal interests may include financial interests. *Greene v. Karpeles*, 2019 WL 1125796, at *10-*11 (N.D. Ill. Mar. 12, 2019). Personal interests may also include whether the defendant has a "significant stake in the company's ultimate welfare above and beyond that of an employee." *Minemyer v. R-Boc Representatives, Inc.*, 2007 WL 2461666, at *5 (N.D. Ill. Aug. 24, 2007). As co-founders and CEO and President, there can be little dispute—especially at this stage—that this applies to

11

Schwartz and Ton-That. *See id.* at *7 ("this is a close question that is not appropriate for consideration without a more- developed record.").

At this stage, with all reasonable inferences drawn in Plaintiff's favor, the facts certainly support jurisdiction over the two men who directed Clearview's operations in Illinois. Schwartz manages sales, Dkt. 46-2 ¶ 1, meaning he decided to target Illinois entities for Clearview's Biometric Database sales. Schwartz also knowingly invested money into Clearview for purposes of facilitating its scraping and scanning operations of photos that would include Illinois citizens to create a product attractive to Illinois customers. Dkt. 6 ¶ 49. Similarly, Ton-That manages Clearview's technology, giving him the discretion to decide whether Clearview should have scraped photographs of Illinois residents and collected Illinois residents' Biometric Identifiers in violation of BIPA. Moreover, as the CEO, Ton-That had the discretion to direct Schwartz not to market the technology in Illinois. Such discretion as high-ranking officers deprives them of the fiduciary shield.[8] *See, e.g.*, *Netzky v. Fiedler*, 2001 WL 521396, at *1 (N.D. Ill. May 15, 2001); *Gleike Taxi, Inc. v. Grand Cab LLC*, 2014 WL 985578, at *3 (N.D. Ill. Mar. 12, 2014).

## II. The Court Should Not Transfer This Case to the Southern District of New York.

Plaintiff's transfer motion in the SDNY cases is pending. On May 14, 2020, Chief Judge McMahon entered an order in the SDNY cases stating, "Defendants' time to respond to complaints in these actions is adjourned *sine die*." Group Ex. 4 (orders). Transfer is appropriate

---

[8] While Plaintiff need not pierce Clearview's corporate veil to show the inapplicability of the fiduciary shield doctrine, it is also true that the evidence demonstrates a lack of corporate formality at Clearview, as well as a unity of interest between Clearview and its high-ranking officials sufficient to support the inference for that jurisdictional basis at this pleadings stage. Clearview is not registered to do business in New York, it operated out of Schwartz's home, customers were directed to make payment to Schwartz's home, and it used Schwartz's home address on its corporate letterhead. *See* Dkt. 57-2 at 7; Dkt. 57-3. (To be clear, Plaintiff need not pierce Clearview's corporate veil to show the inapplicability of the fiduciary shield doctrine. Rather, veil piercing is an independent basis. "[D]efeating the fiduciary shield for purposes of exercising personal jurisdiction does not require a plaintiff to show that it could pierce the defendant's employer's corporate veil for purposes of establishing liability." *Greene*, 2019 WL 1125796, at *11.)

12

where: "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Campbell v. Campbell*, 262 F. Supp. 3d 701, 709 (N.D. Ill. 2017); 28 U.S.C. § 1404(a). As the movants, Defendants bear the burden of showing that the SDNY is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

### A. Convenience of the Parties and Witnesses Weighs against Transfer.

In evaluating "convenience," the Court should consider the plaintiff's choice of forum, the situs of material events, the relative ease of access to sources of proof, and the convenience of the parties and witnesses. *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 979 (7th Cir. 2010); *Campbell*, 262 F. Supp. 3d at 709.

Plaintiff filed this case in Illinois, a choice that normally is entitled to substantial weight. *See Campbell*, 262 F. Supp. 3d at 709-10. This factor may be given less weight in the context of nationwide class actions, but one of the proposed classes here is an Illinois Class. Thus, this factor is either neutral or weighs against transfer.

Plaintiff is an *Illinois resident* who filed an action in an *Illinois federal court* for violations of an *Illinois statute* that protects *Illinois citizens* and caused him and other Class Members harm in Illinois. The relevant events occurred primarily and substantially within Illinois: (a) Plaintiff and Class Members reside/resided in Illinois; (b) Defendants' deception and failure to disclose occurred in Illinois; and (c) the injuries at issue occurred/will occur in Illinois. Defendants failed to obtain Plaintiff's and Class Members' consent in Illinois to use their Biometric Identifiers. Had Defendants made any disclosures to Plaintiffs and Class Members about their lax security practices, the disclosures would have occurred in Illinois. Moreover, the injuries at issue have

13

occurred/will occur in Illinois. *Bryant* makes clear that the injuries at issue occurred in Illinois. 2020 WL 2121463, at *3-*7.

The above facts outweigh any connection this case may have to New York. Defendants tie their request to transfer to their incorrect belief that the Court does not have personal jurisdiction over them. Dkt. 46 at 13. Because Defendants have built their transfer argument on a faulty foundation, the argument necessarily fails. Nothing about Defendants' claimed generic ties to New York outweighs the substantive connection this case has to Illinois.

Transferring this case to New York would force Plaintiff, an individual, and potential countless individual class members, to travel out of state to litigate this case. Given Defendants' vast resources—as evidenced by their high-powered law firm and billionaire investors,[9] travel to Illinois does not impose the same burden on them. Moreover, unlike Plaintiff, Defendants chose to target their suit-related conduct at Illinois. Defendants' argument that Plaintiff "has already decided to *voluntarily* litigate in New York" (Dkt. 46 at 14) is makeweight. Plaintiff moved to intervene in the SDNY cases to protect his interests in this forum and those of the millions of Illinois residents affected by Clearview's misconduct. Plaintiff also notes that Defendant CDW-G is an Illinois company with its headquarters in Illinois, which weighs against transfer.

The convenience of the witnesses also weighs against transfer. Plaintiff anticipates calling numerous witnesses at trial, including the several of the Illinois entities with which Defendants contracted and, potentially, class members. *See* Ex. 5 (Drury Decl. with exhibits, filed in *Calderon*). If the court transfers this case, Plaintiff will be unable to compel the in-court testimony of these third-party witnesses. In contrast, Defendants can require their employees to appear at trial and, likely, will want them to do so.

---

[9] *See* https://www.buzzfeednews.com/article/ryanmac/clearview-ai-trump-investors-friend-facial-recognition (last accessed May 20, 2020).

While the operative facts occurred in Illinois, evidence of Defendants' wrongful conduct likely will be found in materials that can be produced electronically. *See Campbell*, 262 F. Supp. 3d at 710. Although the Defendants argue that their real estate, servers, and facilities are in New York (Dkt. 46 at 14), this case is not like a car accident where a visit to the "scene of the crime" may be necessary. Given that Illinois is the situs of material events, if anything, more non-electronic documents will be located in Illinois.

### B. The Interests of Justice Weigh against Transfer.

The "interests of justice" factors include each court's familiarity with the relevant law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Research Automation, Inc.*, 626 F.3d at 978. These factors weigh against transfer. This case will require application and interpretation of BIPA, an Illinois statute with which this Court and the Seventh Circuit are very familiar. For the same reason—BIPA—it is more desirable to resolve this controversy in Illinois than New York. Illinois's relationship to BIPA violations is much greater than New York's, where there is no relationship. Moreover, given the number of Illinois law enforcement and government agencies that contracted with Defendants, Illinois has a close relationship with Plaintiff's civil rights claims, as well.

### C. This Case Is the First-Filed Case

This case is the first-filed case, which is a factor that weighs against transfer.

### CONCLUSION

For the foregoing reasons, the Court should deny the Clearview Defendants' motion to dismiss.

Respectfully submitted,

/s/ Elizabeth Wang
One of Plaintiff's Counsel

| | |
|---|---|
| Arthur Loevy<br>Michael Kanovitz<br>Jon Loevy<br>Scott R. Drury<br>LOEVY & LOEVY<br>311 N. Aberdeen, 3rd Floor<br>Chicago, Illinois 60607<br>312.243.5900<br>arthur@loevy.com<br>mike@loevy.com<br>jon@loevy.com<br>drury@loevy.com | Elizabeth Wang<br>LOEVY & LOEVY<br>2060 Broadway, Suite 460<br>Boulder, CO 80302<br>720.328.5642<br>elizabethw@loevy.com |

## **CERTIFICATE OF SERVICE**

I, Elizabeth Wang, an attorney, hereby certify that, on May 20, 2020, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Elizabeth Wang
*One of David Mutnick's Attorneys*