**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re CLEARVIEW AI, INC. DATA
LITIGATION                                    MDL Docket No. _____

**MEMORANDUM OF LAW IN SUPPORT OF THE CLEARVIEW
DEFENDANTS' MOTION TO TRANSFER AND COORDINATE OR
CONSOLIDATE ACTIONS FOR PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    A.    Clearview Operates From Its New York Headquarters ........................................ 3

    B.    The Clearview Class Actions .............................................................................. 4

ARGUMENT ........................................................................................................................... 7

I.    The Actions Are Appropriate for Transfer ..................................................................... 8

    A.    The Actions Involve Common Questions of Fact................................................ 8

    B.    Transfer Will Serve the Convenience of the Parties and Witnesses ..................... 9

    C.    Transfer Will Promote the Just and Efficient Conduct of the Actions ................ 10

II.    The Actions Should Be Transferred to the Southern District of New York .................... 11

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Alibaba Grp. Holding Ltd. Sec. Litig.*,
   109 F. Supp. 3d 1379 (U.S. J.P.M.L. 2015) ........................................................14

*In re AOL Time Warner, Inc. Secs. and "ERISA" Litig.*,
   MDL No. 1500, 381 F.Supp.2d 192, ECF No. 30 (J.P.M.L. Sept. 10, 2009) ........................14

*In re Armored Car Antitrust Litig.*,
   462 F. Supp. 394 (J.P.M.L. 1978).....................................................................13

*In re AT&T Corp. Secs. Litig.*,
   No. 1399, 2001 WL 34834425 (J.P.M.L. 2002) .....................................................9

*In re Bayou Hedge Funds Inv. Litig.*,
   429 F. Supp. 2d 1374 (J.P.M.L. 2006)................................................................14

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
   325 F. Supp. 3d 1374 (J.P.M.L. 2018)................................................................13

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...........................13

*In re Facebook Internet Tracking Litig.*,
   844 F. Supp. 2d 1374 (J.P.M.L. 2012)..................................................................9

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
   325 F. Supp. 3d 1362 (J.P.M.L. 2018)..................................................................9

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   867 F. Supp. 2d 1356 (J.P.M.L. 2012)..................................................................9

*In re Holiday Magic Sec. & Antitrust Litig.*,
   368 F. Supp. 806 (J.P.M.L. 1973)......................................................................12

*In re Iphone/Ipad Application Consumer Privacy Litig.*,
   802 F. Supp. 2d 1363 (J.P.M.L. 2011)..................................................................9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   24 F. Supp. 3d 1361 (J.P.M.L. 2014)...................................................................8

*In re M3Power Razor Sys. Mktg. & Sales Practices Litig.*,
   398 F. Supp. 2d 1363 (J.P.M.L. 2005)..............................................................2, 10

*In re Magic Marker Sec. Litig.*,
   470 F. Supp. 862 (J.P.M.L. 1979).........................................................................11

*In re Marsh & McLennan Cos. Secs. Litig.*,
   501 F.Supp.2d 452 No. 1744, ECF No. 29 (J.P.M.L. Sept. 10, 2009) ...................14

*In re Monat Hair Care Prod. Mktg., Sales Practices & Prod. Liab. Litig.*,
   325 F. Supp. 3d 1364 (J.P.M.L. 2018).............................................................12, 13

*In re Motorcar Parts & Accessories, Inc. Sec. Litig.*,
   No. 1323, 2000 U.S. Dist. LEXIS 2585 (J.P.M.L. Mar. 6, 2000) ..........................11

*In re New York City Mun. Sec. Litig.*,
   439 F. Supp. 267 (J.P.M.L. 1977)..........................................................................10

*In re Nickelodeon Consumer Privacy Litig.*,
   949 F. Supp. 2d 1377 (J.P.M.L. 2013).....................................................................9

*In re Park W. Galleries, Inc., Litig.*,
   887 F. Supp. 2d 1385 (U.S. Jud. Pan. Mult. Lit. 2012) ..........................................13

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
   560 F. Supp. 2d 1348 (J.P.M.L. 2008)....................................................................12

*In re Pineapple Antitrust Litig.*,
   342 F. Supp. 2d 1348 (J.P.M.L. 2004)....................................................................13

*In re Raymond Lee Org., Inc. Sec. Litig.*,
   446 F. Supp. 1266 (J.P.M.L. 1978).........................................................................11

*Santana v. Take-Two Interactive Software, Inc.*,
   717 F. App'x 12 (2d Cir. 2017)...............................................................................13

*In re Sugar Indus. Antitrust Litig.*,
   395 F. Supp. 1271 (J.P.M.L. 1975).........................................................................11

*In re TikTok, Inc. Consumer Privacy Litig.*,
   No. MDL 2948, 2020 WL 4670725 (J.P.M.L. Aug. 4, 2020) ...................................9

*In re TransOcean Tender Offer Sec. Litig.*,
   415 F. Supp. 382 (J.P.M.L. 1976)...........................................................................10

*In re Tyco Int'l, Ltd. Sec. Litig.*,
   No. 1335, 2000 U.S. Dist. LEXIS 5551 (J.P.M.L. Apr. 26, 2000)..........................11

*In re Veeco Instruments Inc. Sec. Litig.*,
   387 F. Supp. 2d 1365 (J.P.M.L. 2005).....................................................................14

*Vigil v. Take-Two Interactive Software, Inc.*,
235 F. Supp. 3d 499 (S.D.N.Y.) .........................................................................13

*In re Vitamin C Antitrust Litig.*,
416 F. Supp. 2d 1352 (J.P.M.L. 2006) ................................................................14

*In re Vizio, Inc., Consumer Privacy Litig.*,
176 F. Supp. 3d 1374 (J.P.M.L. 2016) ..................................................................9

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
471 F. Supp. 2d 1354 (J.P.M.L. 2007) ................................................................12

*In re Wash. Public Power Supply Sys. Sec. Litig.*,
568 F. Supp. 1250 (J.P.M.L. 1983) .....................................................................11

*In re Wireless Tel. Servs. Antitrust Litig.*,
249 F. Supp. 2d 1379 (J.P.M.L. 2003) ................................................................13

**Statutes**

28 U.S.C. § 1407(a) ..............................................................................................1, 2, 8

California Unfair Competition Law .............................................................................5

Illinois Consumer Fraud and Unfair Business Practices Act .....................................6

Virginia Code § 8.01-40 ..............................................................................................5

Virginia Computer Crimes Act ....................................................................................5

Movants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, and Richard Schwartz (collectively, the "Clearview Defendants") respectfully submit this Memorandum of Law in support of their Motion to Transfer and Coordinate or Consolidate Actions for Pretrial Proceedings under 28 U.S.C. § 1407(a).

## INTRODUCTION

Plaintiffs have filed ten substantively identical putative class actions challenging various aspects of Clearview's facial recognition business practices ("Actions").[1] Six of the cases are pending in the Southern District of New York ("New York Actions"), where all the conduct claimed to be actionable occurred, where Clearview is headquartered, and where all the Clearview Defendants are residents. Four of these cases are pending in the Northern District of Illinois ("Illinois Actions"), where no conduct claimed to be actionable actually occurred and no individuals with knowledge of that conduct reside but in which the Plaintiffs reside. Two federal judges—Chief Judge Colleen McMahon in the Southern District of New York and Judge Sharon Coleman in the Northern District of Illinois—have ordered the parties to proceed with the Actions both in New York and Illinois concurrently. No answer or response has been filed in any of the Actions, and no discovery has begun. As a result, the Actions are perfectly suited for pre-trial coordination under 28 U.S.C. § 1407(a). For the following reasons, centralization of these virtually identical putative class actions in the Southern District of New York before Chief Judge McMahon

---

[1] As set forth in the attached Schedule of Related Actions, the Actions are: *Broccolino v. Clearview AI, Inc.*, 20-cv-2222 (S.D.N.Y.); *Burke v. Clearview AI, Inc.*, 20-cv-3104 (S.D.N.Y.); *Calderon v. Cleraview AI, Inc.*, 20-cv-1296 (S.D.N.Y.); *Hall v. Clearview AI, Inc.*, 20-cv-846 (N.D. Ill.); *John v. Clearview AI, Inc.*, 20-cv-3481 (S.D.N.Y.); *Marron v. Clearview AI, Inc.*, 20-cv-2989 (N.D. Ill.); *McPherson v. Clearview AI, Inc.* (S.D.N.Y.); *Mutnick v. Clearview AI, Inc.*, 20-cv-512 (N.D. Ill.); *Roberson v. Clearview AI, Inc.*, 20-cv-3705 (S.D.N.Y.); *Thornley v. Clearview AI, Inc.*, 20-cv-3843 (N.D. Ill.).

will serve the convenience of the parties and witnesses, and will promote the just and efficient conduct of the Actions.

*First*, the Actions involve "one or more common questions of fact." 28 U.S.C. § 1407(a). Plaintiffs in all ten Actions allege that they posted photographs of themselves on various social media websites; Clearview downloaded and collected from the internet publicly-available photographs of Plaintiffs and other putative class members; Clearview assembled a database of approximately three billion publicly-available photographs; Clearview obtained facial vectors from many of the photographs; and Clearview created an app and licensed it to users who can view search results from Clearview's database. In addition to setting forth essentially the same factual allegations, all ten Actions assert virtually identical legal claims.

*Second*, centralization will serve "the convenience of parties and witnesses." *Id.* Discovery will be largely duplicative because the Actions are based on the same factual allegations as well as overlapping legal theories. Plaintiffs will likely serve similar document requests and interrogatories, and seek the depositions of the same witnesses. In these circumstances, one court should "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that the common party and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions." *In re M3Power Razor Sys. Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1363, 1364-65 (J.P.M.L. 2005).

*Third*, centralization will "promote the just and efficient conduct" of the Actions. 28 U.S.C. § 1407(a). If the Actions are not centralized, Chief Judge McMahon and Judge Coleman will each be confronted with nearly identical motions addressing the same factual and legal issues, thus wasting judicial resources and creating a significant risk of inconsistent rulings. Indeed, centralization is particularly appropriate where, as here, all of the Actions are putative class actions

on behalf of overlapping (and largely identical) putative classes. Contradictory rulings on class certification or other legal issues could impose conflicting obligations on Clearview or could subject putative class members in multiple Actions to irreconcilable determinations concerning their entitlement to relief.

*Fourth*, the Actions should be centralized before Chief Judge McMahon in the Southern District of New York. As an initial matter, two federal judges have already determined that "New York is the primacy locus of the disputes." *Calderon*, ECF No. 51 at 15. Moreover, a majority of the Actions are pending in the Southern District of New York where Chief Judge McMahon has had significant experience overseeing MDL proceedings, whereas Judge Coleman appears to have none. Finally, the Southern District of New York is less congested than the Northern District of Illinois.

## BACKGROUND

### A.  Clearview Operates From Its New York Headquarters

Clearview is a Delaware corporation with its headquarters and principal place of business in New York. Clearview collects publicly available images on the internet and organizes them into a searchable database, which can then be searched on an online app by licensed users. By using the Clearview app, licensed law enforcement agencies and government agencies have been able to help track down at-large criminals and to identify victims of crimes.

Clearview's technology searches the "open web" and public sources for image files, and downloads the files and webpage URL into a database. Ex. 1 ¶ 7. The files Clearview retrieves are accessible to any individual with an internet connection anywhere in the world. Any images collected by Clearview were collected from its place of business in New York, and are stored on servers that reside in New York or New Jersey. *Id.* ¶ 9.

Ton-That and Schwartz respectively manage technology and sales for the company, and

Ton-That also serves as the company's chief executive officer. Ton-That and Schwartz are both residents of New York.[2] *Id.* ¶ 2; Ex. 2 ¶ 2.

Clearview does not have any operations in Illinois and the Clearview Defendants, all located in New York, do not have meaningful contacts with Illinois. Ex. 1 ¶ 10. As for Ton-That and Schwartz, they do not own property in Illinois, pay taxes in Illinois, or have driver's licenses in Illinois. *Id.* ¶ 3; Ex. 2 ¶ 3. They travel to Illinois only sporadically, and they have never traveled to Illinois to conduct Clearview business. Ex. 1 ¶¶ 3-4; Ex. 2 ¶¶ 3-4.

## B. The Clearview Class Actions

From January through May 2020, Plaintiffs filed ten substantively identical federal putative class actions complaints against Clearview.[3] All ten complaints allege that:

- Plaintiffs posted photographs of themselves on various social media websites, *see Broccolino* Compl. ¶¶ 18, 27; *Burke* Compl. ¶¶ 11, 16; *Calderon* Compl. ¶¶ 10, 11; *Hall* Compl. ¶ 54; *John* Compl. ¶¶ 53-57; *Marron* Compl. ¶ 50; *McPherson* Compl. ¶ 11; *Mutnick* Compl. ¶ 28; *Roberson* Compl. ¶ 10; *Thornley* Compl. ¶¶ 9-11.

- Clearview engaged in a process known as "scraping," in which it collected publicly-available photographs of Plaintiffs and other putative class members from the internet, *see Broccolino* Compl. ¶¶ 2, 32, 87; *Burke* Compl. ¶ 3; *Calderon* Compl. ¶ 5; *Hall* Compl. ¶ 11; *John* Compl. ¶¶ 15-16; *Marron* Compl. ¶ 2; *McPherson* Compl. ¶ 3; *Mutnick* Compl. ¶ 35; *Roberson* Compl. ¶ 7; *Thornley* Compl. ¶ 8.

- Clearview assembled a database of approximately three billion publicly-available photographs, *see Broccolino* Compl. ¶ 33; *Burke* Compl. ¶ 3; *Calderon* Compl. ¶ 5; *Hall* Compl. ¶ 3; *John* Compl. ¶ 24; *Marron* Compl. ¶ 2; *McPherson* Compl. ¶ 3; *Mutnick* Compl. ¶ 36; *Roberson* Compl. ¶ 7; *Thornley* Compl. ¶ 7.

- Clearview obtained biometric identifiers and information from the photographs, *see Broccolino* Compl. ¶ 33; *Burke* Compl. ¶ 3; *Calderon* Compl. ¶ 12; *Hall* Compl. ¶ 13; *John* Compl. ¶ 2; *Marron* Compl. ¶ 31; *McPherson* Compl. ¶ 12; *Mutnick* Compl. ¶ 36; *Roberson* Compl. ¶ 21; *Thornley* Compl. ¶¶ 12-13.

---

[2] Schwartz serves as the primary caregiver to a close relative who has a serious medical condition. Due to this commitment, he infrequently leaves New York. Ex. 1 ¶ 2.

[3] One of these cases was filed in state court, but has since been removed to the Northern District of Illinois. *Thornley et al. v. Clearview AI, Inc.*, Case No. 20-3843 (N.D. Ill), ECF No. 1.

- Clearview created an app, which it licenses to users who can access the database, *see Broccolino* Compl. ¶¶ 2, 3; *Burke* Compl. ¶ 3; *Calderon* Compl. ¶ 7; *Hall* Compl. ¶ 16; *John* Compl. ¶ 28; *Marron* Compl. ¶ 34; *McPherson* Compl. ¶ 12; *Mutnick* Compl. ¶ 38; *Roberson* Compl. ¶ 9; *Thornley* Compl. ¶ 14.

Based on these identical factual allegations, Plaintiffs filed the Actions asserting overlapping causes of action, under overlapping federal and state law (including New York, Illinois, California, and Virginia), on behalf of overlapping putative classes. The following charts provide a brief description of the Actions.

### Cases Pending in the Southern District of New York

| Caption | Date | Class(es) | Claims |
|---|---|---|---|
| *Roberson v. Clearview AI, Inc.,* 1:20-cv-03705-CM (S.D.N.Y.) | 2/3/20 | Virginia residents whose pictures were used by Clearview without consent | Virginia Code § 8.01-40; Virginia Computer Crimes Act |
| *Calderon et al. v. Clearview AI, Inc., et al.,* 1:20-cv-01296-CM (S.D.N.Y.) | 2/13/20 | Illinois residents whose biometric identifiers were collected by Clearview | Illinois BIPA |
| *Burke et al. v. Clearview AI, Inc., et al.,* 1:20-cv-03104-CM (S.D.N.Y.) | 2/27/20 | California and Illinois residents whose biometric identifiers were collected by Clearview | California Unlawful and Unfair Business Practices; California Commercial Misappropriation; California Unjust Enrichment; Illinois BIPA |
| *Broccolino, v. Clearview AI, Inc.,* 1:20-cv-02222 (S.D.N.Y.) | 3/12/20 | Illinois residents whose biometric identifiers were collected by Clearview | Illinois BIPA; Illinois Unjust Enrichment |
| *McPherson v. Clearview AI, Inc., et al.,* 1:20-cv-03053-CM (S.D.N.Y.) | 4/15/20 | Illinois residents whose biometric identifiers were collected by Clearview | Illinois BIPA; Illinois Unjust Enrichment |
| *John et al. v. Clearview AI, Inc.,* 1:20-cv-03481-CM (S.D.N.Y.) | 5/4/20 | Nationwide, California, New York, and Illinois residents whose biometric identifiers were collected by Clearview | Illinois BIPA; California Unfair Competition Law; California Right of Publicity; California Constitutional Right to Privacy; California Subclass; Intentional Interference with Contractual Relations; Unjust Enrichment |

These six New York Actions have been deemed related, and are pending before Chief Judge McMahon. On May 29, 2020, Chief Judge McMahon stated that she "intend[s] to

consolidate the [New York Actions] and proceed with case management." *Calderon*, ECF No. 51 at 4. The parties are scheduled to appear for an initial conference before Chief Judge McMahon on September 16, 2020. *Calderon*, ECF No. 62. Plaintiffs have not filed a consolidated complaint, the Clearview Defendants have not filed any responsive pleadings, and discovery has not commenced in the New York Actions.

**Cases Pending in the Northern District of Illinois**

| Caption | Date | Class(es) | Claims |
|---|---|---|---|
| *Mutnick v. Clearview AI, Inc., et al.,* 1:20-cv-00512 (N.D. Ill.) | 1/22/20 | Nationwide and Illinois residents whose biometric identifiers were collected by Clearview | Federal Constitution; Illinois BIPA; Unjust Enrichment |
| *Hall v. Clearview AI, Inc.,* 1:20-cv-00846 (N.D. Ill.) | 2/5/20 | Illinois residents whose biometric identifiers were collected by Clearview. | Illinois BIPA; Illinois Consumer Fraud and Unfair Business Practices Act; Conversion |
| *Marron v. Clearview AI, Inc., et al.,* 1:20-cv-02989 (N.D. Ill.) | 5/20/20 | Illinois residents whose biometric identifiers were collected by Clearview. | Illinois BIPA |
| *Thornley, et al.v. Clearview AI, Inc.,* 1:20-cv-03843 (N.D. Ill.) | 5/27/20 | Illinois residents whose biometric identifiers were collected by Clearview. | Illinois BIPA |

These four Illinois Actions have been deemed related and are pending before Judge Coleman. Judge Coleman has consolidated *Mutnick*, *Hall*, and *Marron*, but she has not consolidated *Thornley* because a motion for remand is pending in that case. *Mutnick*, ECF No. 87. Plaintiff in *Mutnick* has moved the Court for a preliminary injunction. *Mutnick*, ECF No. 31. Plaintiffs have been ordered to file a consolidated amended complaint by August 31, 2020. *Mutnick*, ECF No. 87. The Clearview Defendants have not filed any responsive pleadings on the merits, and discovery has not commenced in the Illinois Actions.

6

As a result of Chief Judge McMahon's and Judge Coleman's orders, the two sets of Actions are proceeding separately against the Clearview Defendants based on the same underlying allegations.

Notably, two of the three courts to have considered the issue have concluded that New York is the center of gravity for these disputes. First, Judge Rossie Alston Jr. in the Eastern District of Virginia transferred the *Roberson* action from Virginia, where it originally was filed, to New York. *Roberson*, ECF No. 24. In doing so, Judge Alston found that venue was "appropriate in the Southern District of New York because a substantial part of the events . . . giving rise to [Plaintiff's] claim[s]" took place in that jurisdiction. *Id.* at 24 (citations and quotation marks omitted). Likewise, Chief Judge McMahon concluded that, "[b]y all indications, New York is the primary locus of the disputes." *Calderon*, ECF No. 51 at 15. In support of that conclusion, Chief Judge McMahon explained that "Clearview has its headquarters and principal place of business in New York"; the "majority of Clearview's employees work in New York"; the "servers hosting the data necessary for Clearview's business are located in New York"; and the "images collected by Clearview were accessible to Clearview from its place of business in New York." *Id.* (citations and internal quotation marks omitted).[4]

## ARGUMENT

As discussed below, the Clearview Actions should be (1) transferred for "coordinated or consolidated pretrial proceedings" under 28 U.S.C. Section § 1407(a); and (2) centralized in the Southern District of New York before Chief Judge McMahon.

---

[4] Judge Coleman in the Northern District of Illinois denied the Clearview Defendants' motion to transfer to the Southern District of New York. *Mutnick*, ECF No. 86.

## I.      The Actions Are Appropriate for Transfer

Transfer is appropriate under § 1407(a) when:  (1) the actions "involv[e] one or more common questions of fact"; (2) the transfer would be "for the convenience of parties and witnesses"; and (3) the transfer will "promote the just and efficient conduct" of the Actions.  All of these requirements favor transfer of the Illinois Actions and coordination of all the Actions in the Southern District of New York.

### A.  The Actions Involve Common Questions of Fact

Section 1407(a)  provides for the transfer and coordination of cases that involve "common questions of fact."  "Section 1407 does not," however, "require a complete identity or even a majority of common factual issues as a prerequisite to centralization."  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014).

The Actions easily satisfy this requirement.   As discussed above, the Actions all focus on the same alleged invasion of privacy by Clearview through the collection of publicly-available photographs and the creation of facial vectors from those photographs.  Common questions across the Actions include, among others, whether Clearview impermissibly collected, possessed, disclosed, and/or profited from the biometric identifiers and/or biometric information of Plaintiffs and the putative class members.

The Panel consistently consolidates privacy class actions concerning apps and online services available on a nationwide basis that are the subject of numerous related class actions.  For example, the Panel recently found "common questions of fact" where "Plaintiffs in all actions challenge defendants' conduct with respect to the scanning, capture, retention, and dissemination of the facial geometry and other biometric information of users of the [TikTok] app."  *In re TikTok, Inc. Consumer Privacy Litig.*, No. MDL 2948, 2020 WL 4670725, at *1 (J.P.M.L. Aug. 4, 2020); *see also In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362

(J.P.M.L. 2018); *In re Vizio, Inc., Consumer Privacy Litig.*, 176 F. Supp. 3d 1374, 1375-76 (J.P.M.L. 2016); *In re Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013); *In re Google Inc. Cookie Placement Consumer Privacy Litig.,* 867 F. Supp. 2d 1356, 1357 (J.P.M.L. 2012); *In re Facebook Internet Tracking Litig.*, 844 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012); *In re Iphone/Ipad Application Consumer Privacy Litig.*, 802 F. Supp. 2d 1363, 1364 (J.P.M.L. 2011).

In addition to making common factual allegations, Plaintiffs also assert many of the same causes of action. Indeed, nine of the ten Actions assert violations of BIPA (all but *Roberson*). Three cases—*John*, *Burke*, and *Roberson*—assert claims under California, New York, and/or Virginia law, but the Panel regularly grants transfer requests when the underlying facts giving rise to the differing state law theories are common in all the actions. *In re AT&T Corp. Secs. Litig.*, No. 1399, 2001 WL 34834425, at *1 (J.P.M.L. 2002) ("Nor is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core."). Because the Actions raise the same factual allegations and common questions of law, the first requirement of Section 1407 is satisfied.

### B. Transfer Will Serve the Convenience of the Parties and Witnesses

Transfer and coordination will also serve "the convenience of parties and witnesses." Discovery will be largely duplicative because the Actions rely upon nearly identical factual allegations as well as overlapping legal theories. Plaintiffs will likely serve similar document requests and interrogatories, and seek depositions of the same Clearview employees and other witnesses. It would be wasteful and inefficient for the same discovery to be conducted across two different judicial districts.

By contrast, if the Actions are centralized and coordinated, all counsel will be able to work together in one pretrial proceeding. The parties can thus "apportion their workload and otherwise

combine forces to effectuate an overall savings of cost and a minimum of inconvenience to all concerned with the discovery activities." *In re New York City Mun. Sec. Litig.*, 439 F. Supp. 267, 270 (J.P.M.L. 1977). Given the identity of the underlying cases, it is only reasonable that one court should "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that the common party and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions." *In re M3Power Razor Sys. Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1363, 1365 (J.P.M.L. 2005).

Accordingly, the transfer of the Actions would serve the convenience of the parties, the witnesses, and counsel throughout the pretrial proceedings.

### C. Transfer Will Promote the Just and Efficient Conduct of the Actions

Transferring the Actions will also promote the interests of judicial economy and fairness by preventing duplicative—and potentially conflicting—pretrial motion practice.

Without centralization, Chief Judge McMahon and Judge Coleman would need to separately resolve motions addressing identical factual and legal issues, which is a waste of judicial and party resources, and creates a significant risk of inconsistent rulings, especially given the novelties and complexities of data privacy law generally and facial-recognition technology in particular. *In re TransOcean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976) ("[T]he likelihood of motions for . . . dismissal and summary judgment in [multiple] actions . . . makes Section 1407 treatment . . . *necessary* to prevent conflicting pretrial rulings and conserve judicial effort.") (emphasis added).

Moreover, all of the Actions are putative class actions on behalf of nearly identical putative classes, raising the risk of inconsistent rulings with respect to the putative classes. In these circumstances, the Panel regularly grants requests for centralization. *See, e.g.*, *In re Motorcar Parts & Accessories, Inc. Sec. Litig.*, No. 1323, 2000 U.S. Dist. LEXIS 2585, at *2 (J.P.M.L. Mar.

6, 2000) ("Centralization under Section 1407 is thus necessary in order to . . . prevent inconsistent pretrial rulings (especially with respect to class certification issues) . . . ."); *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 1335, 2000 U.S. Dist. LEXIS 5551, at *3 (J.P.M.L. Apr. 26, 2000) (stating that centralization is necessary to "prevent inconsistent pretrial rulings, particularly since plaintiffs in all actions seek to represent the same putative class of securities purchasers, although with slight variations in the class periods"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (holding that transfer "is appropriate, if not necessary, where the possibility of inconsistent class determinations exists").

Finally, the primary ground on which the Panel has denied centralization of actions with common issues of fact is when certain actions have progressed far along the path towards trial. *See, e.g.*, *In re Magic Marker Sec. Litig.*, 470 F. Supp. 862, 865-66 (J.P.M.L. 1979); *In re Raymond Lee Org., Inc. Sec. Litig.*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978). Here, however, all ten Actions are in their infancy. The Clearview Defendants have not filed a substantive response to any of the complaints, and discovery has not begun in any case. For these reasons, efficiency and fairness weigh strongly in favor of transfer and coordination of the Actions.

## II. The Actions Should Be Transferred to the Southern District of New York

The Actions should be centralized before Chief Judge McMahon in the Southern District of New York.

*First*, the Southern District of New York is the "center of gravity of this litigation." *In re Wash. Public Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251-52 (J.P.M.L. 1983). Clearview is headquartered in New York City, and the "witnesses and documents" are located there. *In re: Kaplan Higher Educ. Corp. qui tam Litig.*, 626 F. Supp. 2d 1323, 1324 (J.P.M.L. 2009); *see also In re Monat Hair Care Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 325 F. Supp. 3d 1364, 1365 (J.P.M.L. 2018) (transferring actions to district where defendants were based,

11

which was "where relevant documents and witnesses may be found"). In fact, as discussed above, two federal judges have already determined that "New York is the primacy locus of the disputes." *Calderon*, ECF No. 51 at 15; *see Roberson*, ECF No. 24. These decisions from Chief Judge McMahon and Judge Alston are "entitled to great weight in selecting the most appropriate transferee district for Section 1407 proceedings." *In re Holiday Magic Sec. & Antitrust Litig.*, 368 F. Supp. 806, 807 (J.P.M.L. 1973). By contrast, Clearview does not have any operations in Illinois. And Schwartz and Ton-That have no affiliation with Illinois whatsoever.

*Second*, six of the ten Actions are pending in the Southern District of New York, another factor weighing in favor of centralization there. *See, e.g.*, *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 471 F. Supp. 2d 1354, 1356 (J.P.M.L. 2007) (choosing transferee district where majority of the actions were filed); *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 560 F. Supp. 2d 1348, 1349 (J.P.M.L. 2008) ("We are persuaded that the Southern District of New York is an appropriate transferee district for pretrial proceedings in this litigation, because two of the four actions are already pending there . . . .").

*Third*, and relatedly, the majority of the parties—specifically, the Clearview Defendants and Plaintiffs in five of the six New York Actions[5]—prefer to litigate the Actions in New York, which weighs in favor of transferring to that district. *See In re Monat Hair Care Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 325 F. Supp. 3d 1364, 1365 (J.P.M.L. 2018) (transferring actions to district that "enjoys the support of most responding parties"); *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1377 (J.P.M.L. 2018) (transferring actions to district that was the first choice of plaintiffs in ten out of 19 actions and that no defendants objected to).

---

[5] The Plaintiff in *Roberson* has not yet provided her position.

*Fourth*, the *John* case, which has the most diverse claims and putative classes—including claims under California, New York, and Illinois law, on behalf of a putative nationwide class as well as California, New York, and Illinois putative subclasses—was filed in the Southern District of New York, providing further support for transfer to that district. *John* Compl. ¶¶ 3, 59; *see In re Wireless Tel. Servs. Antitrust Litig.*, 249 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (transferring actions to the Southern District of New York because "the amended complaint filed in this district includes the broadest class claims of any of the pending actions"); *In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004) (transferring actions to the Southern District of New York because the actions pending in that district included multiple types of claims and encompassed the classes in the actions pending elsewhere).[6]

*Fifth*, Chief Judge McMahon is "an experienced transferee judge" who has presided over at least seven MDL proceedings. *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385, 1385 (J.P.M.L. 2012); *see also Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019); *In re: Alibaba Grp. Holding Ltd. Sec. Litig.*, 109 F. Supp. 3d 1379, 1380 (J.P.M.L. 2015); *In re Bayou Hedge Funds Inv. Litig.*, 429 F. Supp. 2d 1374, 1376 (J.P.M.L. 2006); *In re Veeco Instruments Inc. Sec. Litig.*, 387 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005); *In re AOL Time Warner, Inc. Secs. and "ERISA" Litig.*, MDL No. 1500, 381 F.Supp.2d

---

[6] The Illinois plaintiffs may argue that an Illinois judge is more familiar with BIPA, but the Actions assert claims under California, New York, Virginia, and federal law. Moreover, the Second Circuit and Southern District of New York also have experience with BIPA. *See, e.g.*, *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 17 (2d Cir. 2017); *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499 (S.D.N.Y.). In any event, as Chief Judge McMahon already explained in the New York Actions before her, "it long ago became *de rigueur* for a single court to oversee and coordinate litigation that raises identical factual issues under the laws of several, even many states – either by assignment from the Judicial Panel on Multi-District Litigation, or by the filings of multiple actions in a single court." *Calderon*, ECF No. 51 at 18; *see In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L. 1978) ("It is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state.").

192, ECF No. 30 (J.P.M.L. Sept. 10, 2009); *In re Marsh & McLennan Cos. Secs. Litig.*, 501 F.Supp.2d 452, MDL No. 1744, ECF No. 29 (J.P.M.L. Sept. 10, 2009). Chief Judge McMahon's experience with MDLs weighs in favor of transferring the Actions to the Southern District of New York so they can be overseen by a "transferee judge with prior, successful experience in the management of Section 1407 litigation." *In re Vitamin C Antitrust Litig.*, 416 F. Supp. 2d 1352, 1353 (J.P.M.L. 2006). By contrast, it appears that Judge Coleman in the Northern District of Illinois does not have any experience overseeing MDLs.[7] Moreover, as Judge Coleman already explained in *Mutnick*, the Southern District of New York is "less congested" than the Northern District of Illiois. *Mutnick*, ECF No. 86 at 7 (explaining that the time from filing a lawsuit until trial is 31 months in the Southern District of New York and 39 months in the Northern District of Illinois).

## CONCLUSION

For these reasons, the Clearview Defendants respectfully request that this Panel enter an order transferring the Actions to Chief Judge McMahon in the Southern District of New York for coordinated or consolidated pretrial proceedings.

---

[7] *See* MDL Sstatistics Report – Distribution of Pending MDL Dockets by District, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf (last visited Aug. 17, 2020); Multidistrict Litigation Terminated Through September 30, 2019, https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf (last visited Aug. 17, 2020).

August 17, 2020

Respectfully submitted,

By: /s Lee Wolosky _____

    Lee Wolosky
    Andrew J. Lichtman
    JENNER & BLOCK LLP
    919 Third Avenue
    New York, New York 10022-3908
    Phone: (212) 891-1600
    lwolosky@jenner.com
    alichtman@jenner.com

    Howard S. Suskin
    David P. Saunders
    JENNER & BLOCK LLP
    353 North Clark Street
    Chicago, Illinois 60654
    Phone: (312) 222-9350
    hsuskin@jenner.com
    dsaunders@jenner.com

    Floyd Abrams
    Joel Kurtzberg
    CAHILL GORDON & REINDEL LLP
    80 Pine Street
    New York, NY 10005
    Phone: (212) 701-3621
    fabrams@cahill.com
    jkurtzberg@cahill.com

    Attorneys for Defendants Clearview
    AI, Inc., Hoan Ton-That, and Richard
    Schwartz

15